SUCCESSION OF RIVERA, PLAINTIFF AND APPELLANT, *v.* HERNÁNDEZ ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Humacao in an Action for the Annulment of a Possessory Title, etc.

No. 2256.—Decided April 26, 1921.

REMAND.—Considering the circumstances of this case, which are fully set forth in the opinion, the court held that justice demanded that the case be remanded to the lower court for further proceedings.

The facts are stated in the opinion.

*Mr. L. Mendín Sabat* for the appellant.

*Mr. R. Arce Rollet* for the appellees.

MR. JUSTICE DEL TORO delivered the opinion of the court.

In January of 1916 the heirs of Jacinto Rivera García brought an action in the District Court of Humacao against Gregorio Hernández and Francisca Martínez for the annulment of certain possessory title proceedings, of certain records made in the registry and of a sale, and to recover real properties with their mesne profits.

The case was tried in February of 1917, but judgment was not entered until July of 1919. An appeal was taken in August of that year, but the transcript was not filed in this court until June of 1920.

The plaintiffs alleged that in bad faith and knowing that the properties did not belong to him, Gregorio Hernández instituted proceedings in the Municipal Court of Hato Grande

to recover possessory titles to two rural properties of fourteen and two acres respectively, alleging that he had acquired them by purchase from Jacinto Rivera; that the proceedings were approved by the court and recorded in the registry; that when the proceedings were brought in 1899 Hernández held possession of the properties as lessee; that in 1913 Hernández sold the said properties to Francisca Martínez, his concubine, the sales being fictitious and without considerations and for the sole purpose of defrauding the plaintiffs, the heirs of Jacinto Rivera who died in 1895. They further alleged that in his will Jacinto Rivera named defendant Hernández as the guardian of his minor children.

After some fencing the defendants answered, admitting that Hernández had recovered possessory titles to the properties in a single proceeding wherein he set up that he had acquired them by purchase from Jacinto Rivera in January, 1895, the proceeding having been prosecuted according to law and approved and recorded. The defendants denied that Hernández had held possession of the properties as lessee and admitted that he sold them to Francisca Martínez. They denied that the sale was simulated and without consideration and maintained that, on the contrary, the sale was real and for a good consideration. Hernández denied that he accepted the guardianship of the minor children of Jacinto Rivera.

As new matter the defendants alleged that the said proceedings to establish possessory titles to the properties described in the complaint were prosecuted and recorded about eighteen years before, after notice to and with the consent of the plaintiff heirs, this being the first claim made against the rights of Hernández, and that before the complaint was filed the direct testamentary heirs of Jacinto Rivera assigned to Hernández, by authentic documents and without any reservation, all their rights and interests in the estate, they not having thereafter reacquired such rights and interests.

After hearing the evidence the court dismissed the complaint without costs. The opinion on which the judgment was based reads literally as follows:

"The plaintiffs in this case, who are the heirs of Jacinto Rivera García, brought an action for the annulment of possessory title proceedings, etc., against Gregorio Hernández and Francisca Martínez y Martínez.

"As the essential ground of the complaint it is alleged that in bad faith defendant Gregorio Hernández Rodríguez instituted possessory title proceedings in the Municipal Court of Hato Grande (now San Lorenzo) involving certain properties which are described in the complaint, knowing that the properties belonged to the ancestor of the plaintiffs, Jacinto Rivera García.

"After a trial, at which both parties were present, the case was finally submitted to the court, which reserved decision.

"From the evidence it appears that the properties in question, at the time the possessory title proceedings in controversy were prosecuted, did not belong to Gregorio Hernández, who undoubtedly acted in bad faith, for having been a witness to the will of Jacinto Rivera García, in which the said properties were mentioned among the properties left by the testator, he necessarily had knowledge of that fact when he instituted the said possessory title proceedings. However, after the death of Jacinto Rivera García the plaintiffs sold to the defendant their interests in the said properties, the possession of which is now held by defendant Gregorio Hernández and Francisca Martínez, who lives with him in public concubinage.

"In acquiring the rights and interests of the heirs the defendant acquired among them the right of possession and the adult heirs are estopped from making any claim against the person to whom they assigned their rights and interests. See the case of *Succession of Rivera* v. *Hernández et al.*, 26 P. R. R. 728. And as regards the heirs who at the time of the assignment of their rights and interests were minors, they may at all events bring an action for the dissolution of the community between them and the defendants in the properties here in controversy.

"For the foregoing reasons the complaint is dismissed without costs. The clerk will enter judgment accordingly and notify the parties for their information."

The case of *Succession of Rivera* v. *Hernández et al.*, to

which the trial court refers, was one in which these same plaintiffs sued the defendants in this case for another parcel of land of twenty-five acres belonging to the same estate. The decision of this court is reported in 27 P. R. R. 728. Our judgment was appealed from and reversed by the United States Circuit Court of Appeals for the First Circuit and the case was remanded to the District Court of Humacao for further proceedings in conformity with the principles laid down in the opinion of the Circuit Court. Although perhaps the Circuit Court did not find our reasoning to be wrong, the prevailing idea of its opinion seems to have been to leave an open field to all of the parties for adjusting all of the questions of law involved.

We have carefully examined all of the questions involved in this case, which is really complicated by the form of the pleadings, the manner of presenting the evidence, the negligence with which the transcript of the record was prepared, the opinion of the court itself and its connection with the other case which we have just mentioned.

1. In the transcript the documents offered in evidence were first mentioned and later they were transcribed separately. A comparison of the documents transcribed with those offered in evidence shows that some are missing. When a document was offered in evidence it was stated whether or not it was admitted over the objection of the adverse party. The same was done in transcribing the documents. A comparison of these parts of the transcript discloses many contradictions. Other defects are observed, but those mentioned alone reveal a censurable neglect on the part of the appellants which might justify a dismissal of the appeal.

2. As regards the decision of the court, it is observed that owing perhaps to the long time between the examination of the evidence and the rendition of the judgment (more than two years), the judge did not well remember all of the questions involved and the details of the evidence.

It is also observed that in concluding that the complaint should be dismissed the court was influenced by our decision in *Succession of Rivera* v. *Hernández et al., supra,* and that in his opinion the judgment being rendered by him should allow the minor plaintiffs to bring a new action in defense of their rights.

Judging from the fourth paragraph of the opinion, the judge concluded that the plaintiffs were right in their essential allegation that Gregorio Hernández did not acquire from the author of the estate, Jacinto Rivera, the sixteen acres in question, and, therefore, that the possessory title proceedings were false. But upon inquiring why the judge reached that conclusion it seems that it was principally due to the fact that Gregorio Hernández had been a witness to the will of Jacinto Rivera. The will was presented in evidence and Hernández did not appear as a witness.

The last part of the said fourth paragraph of the opinion seems to indicate that the final conclusion contained in the judgment was due to the weight given by the court to certain deeds of assignment of rights and interests which the defendants produced at the trial. And the evidence shows that those deeds were introduced for the sole purpose of impeaching certain witnesses, and that in his testimony Hernández himself admitted that he had not purchased from Agustín, a son of Jacinto who died after his father's death and while a minor, or from Alberto, the posthumous child of Jacinto. Furthermore, the evidence tended to show that two of the said deeds were executed by minors.

There are two fundamental questions of fact which should have been considered and decided without hesitation by the court, to wit: First: Whether or not Hernández purchased directly from Jacinto Rivera the sixteen acres of land in question and whether or not he was put in possession of the land by the latter. Second: Whether or not Hernández validly sold to Francisca Martínez the said lands in 1913. We

have seen the somewhat imperfect manner in which the judge decided the first question. He said nothing positive about the second, which is important, for if Francisca Martínez actually purchased in good faith in 1913 from one who appeared as the owner in the registry under a possessory title judgment rendered in 1898 and recorded, and also recorded her title in the registry, it would be good even if it should be held that the possessory title judgment was null and void.

3. It is well to say something about the personality of the plaintiffs according to the pleadings and the evidence.

The lands in question belonged to Jacinto Rivera. This fact is admitted by both parties. Jacinto Rivera died testate in 1895, leaving as heirs the children of his first marriage, Josefa, Graciano, Abad, Eduarda, Cristina, Prudencia, Agustín and Regalada Rivera y Delgado. He stated in his will that he was married to a second wife, Eduviges López, who was pregnant when the will was made. He also named as heirs the child or children that might be born and designated the widow as heir "to the usufruct in the part of the estate to which she was entitled in that capacity according to law." In the will he stated that all of the lands left by him had been acquired while he was the widower of his first wife. However, in the remaining evidence there are indications that those lands, or a part of them, at least, were community property of the first conjugal partnership.

In the action Jacinto's children Graciano, Abad, Cristina, Prudencia and Regalada Rivera y Delgado and the posthumous child Alberto Rivera López were plaintiffs. Josefa and Eduarda Rivera Delgado died in 1896 and 1906 respectively. Josefa died unmarried, but left two natural children, Pedro and Jacinto, who were plaintiffs. Eduarda died while married, leaving four children, three of whom named Rafael, Andrés and Ramona Vázquez y Rivera also were plaintiffs. The plaintiffs alleged that they formed the succession of Jacinto Rivera.

Agustín Rivera, a son of Jacinto, named as an heir in the will, did not appear in the complaint. During the trial it was moved to include him as a plaintiff and he was so included. But from the evidence it appears that when he was so included he had long since died at the age of thirteen.

While the action was pending plaintiff Graciano died and was substituted by his minor children Narciso, Pedro, Francisco and Inés Rivera Dávila.

The declaration of heirship of the children of Josefa, Eduarda and Graciano was not produced. And although this was not absolutely necessary, it should be observed that the only evidence offered to prove that they were such children consisted of the testimony of the persons who notified the civil registry of the death of their parents.

As to Agustín, we have already said that he was dead when included as one of the plaintiffs. Nothing was alleged or proved as to who were his heirs. Probably his brothers and sisters and nephews and nieces were his heirs, inasmuch as his parents had died, but some of his grandparents may have been living.

In his opinion the trial judge did not take up any of these questions.

We might go into an examination of the evidence and decide the case definitely. Perhaps this would be the most direct and proper thing to do. However, as notwithstanding the fact that the other action to which we have referred involves other lands and has nothing to do with the possessory title judgment, the fact is that it has many points of contact with the present case and our decision here might perhaps prejudge certain questions which it is fair and proper to leave to be decided by the trial court, and as the other action has recently been remanded to the district court of its origin, we believe that this case should also be remanded, thus permitting the questions involved to be again raised and considered with a view to doing justice to both parties.

For these reasons the judgment appealed from is reversed and the case is remanded to the District Court of Humacao for further proceedings not inconsistent herewith.

*Reversed and remanded.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.